**In re MAINE ASBESTOS CASES.**

**Eugene Alexander, et al., Plaintiffs,**

**v.**

**A.P. Green Industries, Inc., et al., Defendants.**

**Lead Civil Docket No. 98–368–P–H. Nos. 2:98–369, 2:98–370, 2:98–371, 2:98– 372, 2:98–373, 2:98–374, 2:98–375, 2:98–376, 2:98–377, 2:98–378.**

United States District Court, D. Maine.

March 18, 1999.

G. William Higbee, McTeague, Higbee, MacAdam, Case, Watson & Cohen, Topsham, ME, Antonio Pyle, Pittsburgh, PA, for Plaintiffs.

Christopher A.D. Hunt, Cetrulo & Capone, Boston, MA, for Defendants A.P. Green Industries Inc., Armstrong World Industries, Inc., GAF Corporation, Gasket Holdings fka Flexitallic Inc., Flexitallic Inc.

John Hubbard Rich, III, Thomas Schulten, Perkins, Thompson, Hinckley & Keddy, Portland, ME, for Defendant Eastern Refractories Inc.

George F. Burns, Burns, Ray & Delano, Portland, ME, for Defendant Garlock Inc.

Keith Jacques, Smith, Elliott, Smith & Garmey P.A., Saco, ME, for Defendant Owens–Corning.

Nancy Roux, Danaher, Tedford, Lagnese & Neal, Hartford, CT, for Defendant Pittsburgh–Corning Corp.

Mark G. Furey, Thompson, McNaobe, Ashley & Bull, Portland, ME, for Defendant Rapid American Corp.

Michael E. Saucier, Thompson & Bowie, Portland, ME, for Defendant W.L. Blake & Co.

Brian L. Champion, Haley & Champion, Bath, ME, for Third–Party Defendant Bath Iron Works.

## ORDER ON PLAINTIFFS' MOTION FOR REMAND

HORNBY, Chief Judge.

The plaintiffs, all residents of Maine, have moved to remand these removed asbestos cases to state court for lack of diversity subject matter jurisdiction. The issue is whether a Maine defendant (who destroys diversity) was fraudulently joined. Because the removing defendants have not satisfied their burden of proving fraudulent joinder, the plaintiffs' motions to remand are GRANTED. The plaintiffs' motions for costs are DENIED.

### FACTS

The plaintiffs filed state-court complaints against various manufacturers and sellers of asbestos-containing products for damages allegedly caused by exposure to asbestos. All of the plaintiffs are Maine citizens, and in all cases, the exposure in question allegedly came from materials being used at a Maine shipyard belonging to Bath Iron Works (BIW).

All of the defendants are corporations who were manufacturers or sellers of asbestos-containing materials used at the BIW shipyard. With one exception, all of the defendants are incorporated and have their principal places of business in states other than Maine. The lone Maine defendant is a distributor, W.L. Blake & Co. ("Blake"), a Maine corporation with its principal place of business here.

The defendants removed the lawsuit to this court, premising removal jurisdiction upon diversity of citizenship. A diversity suit is removable, however, only if two conditions are met: the suit must be within the court's original jurisdiction, *see* 28 U.S.C. § 1441(a), and therefore must satisfy the requirements of 28 U.S.C. § 1332, and no defendant can be a citizen of the state in which the plaintiff filed the action, *see* 28 U.S.C. § 1441(b). Blake's presence in the suit defeats both conditions for removal. The defendants contend that removal is nonetheless proper, arguing that

the plaintiffs fraudulently joined Blake simply in order to defeat removal. The defendants claim that each plaintiff has no evidence of working with or near any Blake products—asbestos-containing or otherwise. *See* Defs.' Notice of Removal at ¶ 2 & n. 1.

The plaintiffs moved to remand on the ground that this court lacks jurisdiction. In support of that claim, each plaintiff asserts that he or she "joined W.L. Blake as a defendant because it supplied asbestos insulation materials to Bath Iron Works in the [decade or decades] covering the period of [each relevant employee's] employment at the shipyard." Pls.' Mot. to Remand at ¶ 3.

### DISCUSSION

#### A. LEGAL STANDARDS GOVERNING CLAIMS OF FRAUDULENT JOINDER

There is no First Circuit precedent establishing the standards for evaluating a defendant's fraudulent-joinder challenge to the pleaded citizenship of the parties. But the First Circuit has made clear in *Coventry Sewage Associates v. Dworkin Realty Co.*, 71 F.3d 1 (1st Cir.1995), what the standards are for dealing with a challenge to the pleaded amount in controversy, the other component of diversity jurisdiction. There, the Circuit looks to (i) whether the complaint on its face shows to a legal certainty that the claim cannot reach the jurisdictional minimum; and (ii) if the complaint asserts the jurisdictional minimum, whether evidence received on a motion to dismiss or remand shows to a legal certainty that the damages never could have met this part of the plaintiff's claim. The latter inquiry has as its "primary concern" the plaintiff's good faith, objectively viewed. *Id.* at 6. According to an earlier jurisdictional amount case, objective bad faith can be proven by showing that the pleader attached to known facts a significance that no reasonable person familiar with the applicable law would attach, *see Jimenez Puig v. Avis Rent a Car Sys.*, 574

F.2d 37, 40 (1st Cir.1978) (holding that the jurisdictional amount requirement was not satisfied where the claim "could [not] objectively have been viewed as worth [the jurisdictional amount]" by "anyone familiar with the applicable law," even though the court could not "say that [the] plaintiff acted in deliberate bad faith").

The *Coventry* standards derive clearly and directly from *Saint Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845 (1938), where the Supreme Court held that the plaintiff's complaint controls if it is asserted in good faith, and that mere inability to recover on the claim for the jurisdictional amount does not in itself establish the pleader's bad faith. *See id.* at 288–89, 58 S.Ct. 586. Under *St. Paul*, an inadequate amount in controversy ousts the federal court's jurisdiction in only two cases: (i) where it appears to a legal certainty from the face of the complaint that the plaintiff cannot recover the amount claimed, or (ii) where it appears from proofs—also to a legal certainty—that the plaintiff never was entitled to recover the amount claimed and that the claim was pretextual for the purpose of conferring federal jurisdiction. *See id.* at 289, 58 S.Ct. 586.

There is no reason that the standards for determining diversity jurisdiction should differ according to whether citizenship (fraudulent joinder) or jurisdictional amount is being evaluated. The policy concerns in both cases are the same. First, federal courts should rigorously enforce the mandates of the statutes that regulate their jurisdiction, both protecting the statutory right to proceed in federal court and enforcing the limits that Congress has placed on the scope of federal jurisdiction. *See Wecker v. National Enameling & Stamping Co.*, 204 U.S. 176, 185–86, 27 S.Ct. 184, 51 L.Ed. 430 (1907) (stating that federal courts should be vigilant to protect the right to proceed in federal court); *Coventry*, 71 F.3d at 4 (noting that courts should rigorously enforce the limits that Congress has placed on

diversity jurisdiction). Second, "preliminary jurisdictional determinations should neither unduly delay, nor unfairly deprive a party from, determination of the controversy on the merits. As a policy matter, the 'which court' determination ought to be made with relative dispatch so that the parties may proceed to resolution of the dispute's merits." *Coventry*, 71 F.3d at 4 (citations omitted).

Moreover, vintage Supreme Court caselaw on fraudulent joinder is consistent with the First Circuit's approach to the jurisdictional amount. In *Chesapeake & Ohio Railway Co. v. Cockrell*, 232 U.S. 146, 34 S.Ct. 278, 58 L.Ed. 544 (1914), the Court held that in diversity removal cases, a federal court can find jurisdiction by disregarding a nondiverse defendant only where the complaint on its face does not state a valid cause of action against that party (like the first part of *Coventry*) or, if the complaint is facially adequate on the joinder, where joinder of that defendant is "merely a fraudulent device to prevent a removal." *Id.* at 153, 34 S.Ct. 278.[1] According to *Cockrell*, a joinder is not fraudulent "unless it [is] without any reasonable basis." *Id.* "Merely to traverse the allegations upon which the liability of the resident defendant is rested or to apply the epithet 'fraudulent' to the joinder, will not suffice: the showing must be such as compels the conclusion that the joinder is without right and made *in bad faith*." *Id.* at 152, 34 S.Ct. 278 (emphasis added). This is equivalent to the second part of *Coventry*, and to *St. Paul*'s statement that simple inability to recover does not oust federal jurisdiction.

Earlier, in *Wecker*, the Court had established that the test for bad faith in fraudulent joinder cases is an *objective* test (compare the objective test for jurisdictional amount in *Coventry*, 71 F.3d at 6). In *Wecker*, the Court held that diversity juris-

diction existed and that removal was therefore proper where affidavits submitted by the parties conclusively showed that the plaintiff's allegations in its complaint against a nondiverse defendant had no basis in fact. *See Wecker*, 204 U.S. at 185, 27 S.Ct. 184. Subjective good faith on the plaintiff's part was not enough; the Court held that a joinder is fraudulent where it is based on false allegations and the plaintiff has "willfully close[d] his eyes to information within his reach." *Id.* Otherwise, "if the complaint is filed in good faith, the cause of action, for the purposes of removal, may be deemed to be that which the plaintiff has undertaken to make it." *Id.* at 183, 27 S.Ct. 184.

In *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97–98, 42 S.Ct. 35, 66 L.Ed. 144 (1921), the Court made clear how the record is composed. First, the defendant must initially plead facts in the notice of removal that are legally sufficient to justify a removal. The plaintiff must then take issue with the factual allegations in the notice; failing that, the plaintiff is deemed to have admitted the facts pleaded in the notice and may contest only their legal sufficiency as a basis for removal. But where the plaintiff has put the truth of the defendant's factual allegations in controversy—whether by prior pleading or by motion—the defendant bears the burden of persuading the federal court that the allegations are true and that the removal was proper.

Finally, the Supreme Court's fraudulent joinder cases show an abiding concern to protect the plaintiff's status as master of the complaint. The Court uniformly has held that, absent any fraudulent purpose, the plaintiff is free to determine by its pleading the removability of the action, and a purpose to defeat removal is not itself fraudulent. So, for example, when

---

1. The Court in *Cockrell* stated not only that the complaint must state a valid cause of action against the nondiverse defendant but that it also must show a valid basis in state law for a joint (*i.e.,* not a several) liability on the part of all defendants. *See Cockrell*, 232 U.S. at 152–53, 34 S.Ct. 278. The latter requirement was based on the separable controversies doctrine, which does not apply to this case.

the existence of a separable controversy was a ground for removal of a diversity case, the Court consistently held that by pleading only a joint tort and by foregoing any several claim that the plaintiff might have against the nonresident defendant, a plaintiff could defeat that defendant's right to remove. *See, e.g., Illinois Cent. R.R. Co. v. Sheegog*, 215 U.S. 308, 316, 30 S.Ct. 101, 54 L.Ed. 208 (1909) ("In a case of a tort which gives rise to a joint and several liability, the plaintiff has an absolute right to elect, and to sue the tort-feasors jointly if he sees fit, no matter what his motive, and therefore an allegation that the joinder of one of the defendants was fraudulent, without other ground for the charge than that its only purpose was to prevent removal, would be bad on its face."); *Alabama Great Southern Ry. Co. v. Thompson*, 200 U.S. 206, 216, 26 S.Ct. 161, 50 L.Ed. 441 (1906) ("[T]he plaintiff may select his own manner of bringing his action and must stand or fall by his election. If he has improperly joined causes of action he may fail in his suit.... But the question of removability depends upon the state of the pleadings and the record at the time of the application for removal, and it has been too frequently decided to be now questioned that the plaintiff may elect his own method of attack, and the case which he makes in this declaration, bill or complaint, that being the only pleading in the case, is to determine the separable character of the controversy for the purpose of deciding the right of removal."); *cf. Great Northern Ry. Co. v. Alexander*, 246 U.S. 276, 282, 38 S.Ct. 237, 62 L.Ed. 713 (1918) (holding in a FELA case, "this power to determine the removability of his case continues with the plaintiff throughout the litigation, so that whether such a case non-removable when commenced shall afterwards become removable depends not upon what the defendant may allege or prove or what the court may, after hearing upon the merits, *in invitum*, order, but solely upon the form which the plaintiff by his voluntary action shall give to the pleadings in the case as it progresses.").

Under both *Coventry* and the Supreme Court cases on fraudulent joinder, then, the burden is on the party challenging the jurisdiction-related allegations of the complaint to prove that they have no reasonable basis and to prove the pleader's objective bad faith in making those allegations. The party challenging the joinder must prove to a legal certainty that, at the time of filing the complaint, no one familiar with the applicable law could reasonably have thought, based on the facts that the pleader knew or should have known at the time, that a cause of action against the resident defendant could ultimately be proven.

*Coventry* demonstrates that a removing party does not meet this burden by showing merely that the actual facts do not support the complaint as pleaded. " 'The inability of [a] plaintiff to recover ... does not show his bad faith ... But if, from the proofs, the court is satisfied to a [legal] certainty that the plaintiff never was entitled to recover ... and that his claim was therefore colorable for the purpose of [manipulating federal] jurisdiction,' " *Coventry*, 71 F.3d at 5 (quoting *St. Paul*, 303 U.S. at 288–89, 58 S.Ct. 586), then the federal court can ignore that portion of an otherwise well-pleaded complaint (in *Coventry*, damages; here, joinder of an instate defendant). In *Coventry*, the defendants proved to a legal certainty that the plaintiff could never recover the jurisdictional minimum because the plaintiff conceded that actual water usage figures (which formed the basis for calculating the plaintiff's damages) were far less than the plaintiff assumed them to be when filing the complaint. *See id.* at 6. According to *Coventry*, however, this proof was insufficient to prove objective bad faith on the plaintiff's part because at the time of filing, the plaintiff had no reason to believe that its numbers were "factually incorrect." *See id.* at 6–7. The court's "primary concern" was for the plaintiff's good faith. *Id.* at 6. For fraudulent joinder, then, I conclude that a defendant must show to a

legal certainty not only that the actual facts did not entitle the plaintiff to relief against the nondiverse defendant he or she has joined, but also that the plaintiff should have known those actual facts at the time of filing.

I am aware that courts of appeals for other circuits have expressed the standards governing fraudulent joinder differently and have made apparently inconsistent pronouncements on the issue whether a court's inquiry is limited to the pleadings alone, debating whether Rule 12(b) or Rule 56 standards apply. *See generally* James F. Archibald III, Note, *Reintroducing "Fraud" to the Doctrine of Fraudulent Joinder*, 78 Va. L.Rev. 1377, 1387–96 (1992) (discussing cases). The discord among the lower court cases, pushing this inquiry into ever more nuanced analysis, is inconsistent with the need to keep jurisdictional rules clear and simple, as are the rules announced in *Coventry*. Clarity and simplicity help prevent the unnecessary diversion of private and public resources into litigation over jurisdictional questions, permitting those resources to be allocated where they are most needed: to the resolution of the merits of disputes.

### B. Application Of The Fraudulent Joinder Standards To The Facts Of This Case

█ The complaints in these cases allege that the plaintiffs (or their decedents or their spouses) were exposed to asbestos manufactured or sold to BIW by a number of defendants, that the defendants breached the legal duties they owed, and that the asbestos exposure caused the damages complained of. No one contends that the complaints are facially invalid, even as to the Maine defendant W.L. Blake & Co., and it is clear that sellers and manufacturers of asbestos-containing products can be liable, under Maine law, for damages such as those complained of here. *See, e.g.,* 14 M.R.S.A. § 221. Thus, the first test of *Coventry* and the Supreme Court's fraudulent joinder cases is not satisfied.

The real dispute between the parties comes under the second prong of the fraudulent joinder inquiry. The defendants contend that discovery has reached the point where I can say to a legal certainty that the factual allegations in the complaints—namely, the allegations that exposure to asbestos products supplied by Blake harmed the plaintiffs—have no reasonable basis.

Standing alone, however, the assertion that the claims *now* have no reasonable basis—even if the assertion is true—is insufficient to prove a fraudulent joinder. Under the standards I have articulated, the defendants must show objective bad faith to a legal certainty—that no one familiar with the applicable law could reasonably have thought at the time of pleading that a claim against Blake could be proven, based on the facts that the pleader knew or should have known at the time.

In none of these cases have the defendants met this burden. The defendants have offered no evidence that the plaintiffs should have known at the time of filing that they would be unable to prove the facts on which the liability of Blake is premised in the complaint; instead, the defendants have rested their conclusion of fraudulent joinder upon Blake's purported entitlement to summary judgment now, at the end of discovery. I take no position on the question whether Blake is entitled to summary judgment on the current state of the record; that is for the state court to determine. It is worth pointing out, however, that the facts of this case are not as clear cut as the defendants seem to have assumed when they first filed their notice of removal. A close review of the BIW records produced during discovery has turned up significantly more evidence of Blake-supplied asbestos than the defendants initially believed was there. Certainly the facts the defendants have alleged in support of their claim that Blake is not liable do not show to a legal certainty that the plaintiffs reasonably should have known at the time of filing that they

would be unable to prove a claim against Blake. This failure to prove objective bad faith is fatal to the claim of fraudulent joinder.

## C. Costs

 Although the plaintiffs have requested costs from the removing defendants, as authorized under 28 U.S.C. § 1447(c), imposition of costs is not appropriate in this case. · First, the law on fraudulent joinder has been less than clear. Second, I am sensitive to the reasonable suspicion with which the defendants viewed the joinder of Blake in this case. In the long history of asbestos litigation in this district, which has involved extensive discovery of the purchase and use of asbestos at BIW, Blake has never previously appeared as a party defendant, and everyone appears to agree that Blake's role, if any, in the exposure of BIW workers to asbestos is very small indeed. It is not unreasonable for the defendants to have suspected, therefore, that the plaintiffs' ultimate motivation for joining Blake was to prevent removal. Although I have concluded that the plaintiffs' reasons for joining Blake are not relevant,[2] I will not impose costs on the defendants

for alleging fraudulent joinder under these circumstances.

That said, I do not want my review of evidence beyond the complaints or my denial of costs to kindle false hopes in future removing defendants. In the future, costs may be appropriate. Extensive litigation of jurisdictional matters ultimately consumes scarce resources in a way that does little to advance the resolution of the merits of parties' disputes. Arguments that should properly be addressed to the state court on a motion for summary judgment will not prevent a remand after removal to this court, absent proof to a legal certainty that a joinder was not made in objective good faith. When defendants seek to prove a joinder is fraudulent essentially because the plaintiff has failed to discover sufficient evidence against the resident defendant, the hurdle facing the removing defendants is, as it should be, very high.

The plaintiffs' motions to remand these cases to the Maine Superior Court (Sagadahoc County) are GRANTED. The parties will bear their own costs.

So Ordered.

---

[2] If the plaintiffs had an objectively valid basis for joining Blake in the complaint, their subjective motivations about jurisdiction are of no concern to this court. *See Chicago, Rock Island & Pac. Ry. Co. v. Dowell*, 229 U.S. 102, 113–14, 33 S.Ct. 684, 57 L.Ed. 1090 (1913) (holding that joinder is not fraudulent merely because a nondiverse defendant employee is of little means and the diverse employer's liability for its employee's negligence, if any, is unquestioned; the plaintiff's motive for joining the employee "is of no importance"). But in fact their underlying motivations are highly relevant to an understanding of what is going on here. It seems quite plausible that the plaintiffs' incentive for joining Blake does not stem from the value of any monetary contribution that Blake will make to a settlement nor in Blake's ability to answer any eventual judgment. By the same token, it is quite unusual that the defendants should oppose the presence of an additional defendant who might contribute a share (however small) in a settlement with the

plaintiffs. The economics of delay and the incentives it creates for the parties explain this controversy.

If these claims return to state court, they will proceed to resolution. If they remain in federal court, they will encounter significant delay upon their transfer through the Panel on Multidistrict Litigation to the Eastern District of Pennsylvania where no asbestos trials or discovery takes place in deference to global settlement efforts. This delay is of economic benefit to the defendants and imposes costs on the plaintiffs. In all likelihood, this economic reality is driving the behavior of the parties in this matter.

But the Supreme Court has declared subjective motives irrelevant on the remand decision, and it is not for this court to fashion a different rule tailored specifically to the demands of mass tort litigation. Accordingly, these facts have played no role in my decision, except on the issue of costs.